1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                            --oOo--

4   In Re:                      ) Case No. 2:18-bk-12429-NB
                                )
5   DANA HOLLISTER,             ) Chapter 11
                                )
6            Debtor.            ) Los Angeles, California
    _____) Tuesday, November 8, 2022
7                               ) 2:00 p.m.
    HOLLISTER,                   )
8                               )
             Plaintiff,         )
9                               )
    vs.                         )  Adv. No. 2:21-ap-01173-NB
10                              )
    BOBS, LLC,                   )
11                              )
             Defendant.         )
12  _____)
                                )
13  THE BIRD NEST, LLC, et al., )
                                )
14           Plaintiffs,        )
                                )
15  vs.                         )  Adv. No. 2:18-01203-NB
                                )
16  HOLLISTER,                   )
                                )
17           Defendant.         )
18  _____)

19                              HRG RE: MOTION FOR LEAVE TO
                                AMEND PROOF OF CLAIM NO. 33
20
                                CONT'D STATUS CONFERENCE RE:
21                              CHAPTER 11 CASE

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

ii

1                                        CONT'D STATUS CONFERENCE RE:
                                         COMPLAINT FOR DECLARATORY
2                                        RELIEF ALLOWING CLAIM 32 FILED
                                         BY BOBS, LLC AS AN UNSECURED
3                                        CLAIM IN THE AMOUNT OF $1
                                         MILLION
4
                                         CONT'D STATUS CONFERENCE RE:
5                                        COMPLAINT TO DETERMINE NON-
                                         DISCHARGEABILITY OF DEBT
6
                        TRANSCRIPT OF PROCEEDINGS
7              BEFORE THE HONORABLE NEIL BASON
                 UNITED STATES BANKRUPTCY JUDGE
8
    APPEARANCES:
9
    For the Debtor:                      DAVID A. TILEM, ESQ.
10                                       Law Office of David A. Tilem
                                         206 North Jackson Street
11                                       Suite 201
                                         Glendale, California 91206
12                                       (818) 507-6000

13  For Select Portfolio                STEVEN M. DAILEY, ESQ.
      Servicing, Inc.:                   Kutak Rock, LLP
14                                       5 Park Plaza, Suite 1500
                                         Irvine, California 92614
15                                       (949) 417-0999

16  For the Official Committee          KRIKOR MESHEFEJIAN, ESQ.
      of Unsecured Creditors:            Levene, Neale, Bender, Yoo
17                                         & Golubchik, LLP
                                         2818 La Cienega Avenue
18                                       Los Angeles, California 90034
                                         (310) 229-1234
19
    For BOBS, LLC:                       MATTHEW RESNIK, ESQ.
20                                       Resnik, Hayes, Moradi, LLP
                                         17609 Ventura Boulevard
21                                       Suite 314
                                         Encino, California 91316
22                                       (818) 285-0100

23

24

25

iii

1 APPEARANCES:  (Cont'd.)

2 For Paramour Holdings:        NATHAN RUGG, ESQ.
                              CONNER GANTS, ESQ.
3                             Barack, Ferrazzano, Kirschbaum
                                 & Nagelberg, LLP
4                             200 West Madison Street
                              Suite 3900
5                             Chicago, Illinois 60606
                              (312) 984-3100
6
                              JANET A. SHAPIRO, ESQ.
7                             Shapiro Law Firm
                              325 North Maple Drive
8                             Suite 15186
                              Beverly Hills, California
9                                90209
                              (323) 852-0333
10
   Court Recorder:             Dina G. Johnson
11                            United States Bankruptcy Court
                              Edward R. Roybal Federal
12                               Building
                              255 East Temple Street
13                            Los Angeles, California 90012

14 Transcriber:                Jordan Keilty
                              Echo Reporting, Inc.
15                            9711 Cactus Street
                              Suite B
16                            Lakeside, California 92040
                              (858) 453-7590

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

1

1   <u>LOS ANGELES, CALIFORNIA TUESDAY, NOVEMBER 8, 2022 2:00 P.M.</u>

2                              --oOo--

3       (Call to order of the Court.)

4           THE COURT:  This is the matter of Dana Hollister,

5   calendars one through four, and you're all regulars.  So,

6   I'll dispense with the usual announcements except to say

7   please wait until I call on you so that we're not all

8   talking at once.

9           All right.  Let me start with appearances.  For

10  BOBS, Mr. Resnik?

11          MR. RESNIK (via Zoom):  Good afternoon, your

12  Honor.  Matthew Resnik appearing on behalf of BOBS.  Nice to

13  see you.

14          THE COURT:  Thank you.  You as well.

15          All right.  Mr. Rugg?

16          MR. RUGG (via Zoom):  Good afternoon, your Honor.

17  Nathan Rugg, Conner Gants, and Janet Shapiro, all appearing

18  on behalf of Paramour Holdings, LLC.

19          THE COURT:  Thank you, and welcome.

20          MR. RUGG:  Thank you.

21          THE COURT:  Mr. Tilem?

22          MR. TILEM (via Zoom):  Good afternoon, your Honor.

23  David Tilem for the Debtor.

24          THE COURT:  Thank you.

25          Mr. Dailey?

2

1          MR. DAILEY (via Zoom):  Good afternoon, your

2     Honor.  Steve Dailey for Select Portfolio Servicing.

3          THE COURT:  Thank you.

4          Let's see.  Mr. Meshefejian.

5          MR. MESHEFEJIAN (via Zoom):  Good afternoon, your

6     Honor.  Krikor Meshefejian, Levene, Neale, Yoo and

7     Golubchik, appearing on behalf of the Official Committee of

8     Unsecured Creditors.

9          THE COURT:  Thank you.

10          Let's see.  Have I missed anyone?

11     (No response.)

12          THE COURT:  Okay.  All right.  So, unless you tell

13     me otherwise, I will assume you've seen the tentative

14     ruling.  I -- as noted in the tentative ruling, there are

15     several issues on calendar.  The way we had scheduled

16     everything at the last hearing, replies are due orally at

17     the hearing here.  So, I didn't want to jump the gun and

18     give you any oral rulings or tentative rulings or written

19     tentative rulings until you have a chance to present your

20     reply on a couple of issues.  But if it would help to do

21     things in a different sequence and the parties would like me

22     to give you an oral tentative ruling first, I can do that,

23     and I'm flexible about which order we take things in.

24          So, I think we've got the -- there's the motion to

25     amend proof of claim 33.  There are the -- there's the issue

3

1   about whether the payoff demands for proof of claim 33 and

2   32 are adequate, whether the dollar amounts should be

3   anything different from what's been presented, and -- and

4   then the issue about whether BOBS complied with the

5   scheduling order about the disputed claims reserve in terms

6   of bringing the issue of filing papers to get a decision on

7   that issue and what effect that has on the disputed claims

8   reserve.

9          So, I think those are the main issues.  Let me

10  start with you, Mr. Resnik.  How would you like to proceed?

11         MR. RESNIK:  Your Honor, I'll proceed in any way

12  everybody else feels comfortable.  I don't have a lot to say

13  today.  I did read the tentative.  I appreciate all of the

14  information that went into that tentative and the detail,

15  but I'll leave it to the rest of the parties.  However

16  they're comfortable with it, I'm okay with it as well.

17         THE COURT:  Thank you.

18         Mr. Rugg?

19         MR. RUGG:  Your Honor, I'm happy to take them in

20  whatever order.  I guess I'd just ask if we could do it on a

21  pleading-by-pleading basis as opposed to handle all three

22  tentatives and then have responses to all three and then

23  replies, et cetera.

24         THE COURT:  Understood.  Thank you.

25         Mr. Meshefejian?

4

1      MR. MESHEFEJIAN:  Your Honor, no further comments

2 other than what Mr. Rugg just explained.

3      THE COURT:  Okay.  Anyone else?

4    (No response.)

5      THE COURT:  All right.  Why don't I give you at

6 least my oral tentative ruling on the -- well, on the payoff

7 demand issue.  I'm hesitating because in a way it kind of

8 spills over into the disputed claims reserve issue, and I'm

9 trying to be mindful of the request to keep things separate.

10      But let me just give you at least some initial

11 thoughts on the payoff demand issue.

12      MR. RUGG:  Your Honor, if that complicates things

13 and you'd like to handle them both, I hundred percent defer

14 to you on that one.

15      THE COURT:  Okay.

16      MR. RUGG:  I don't want to interrupt your -- your

17 logic or your -- or your statements on that.  So, please, if

18 that's easier for your Honor, I defer to you a hundred

19 percent.

20      THE COURT:  All right.  Well, thank you.

21      All of this is, of course, by necessity, done on a

22 somewhat expedited basis.  And, so, I don't feel that I've

23 got my thoughts quite as organized as I would like, but let

24 me -- let me just go through what I've got, and then we'll

25 see where we're at.

5

1        Okay.  So, I'm starting with the order confirming

2   the plan.  That's docket 1834, and it has in paragraph five

3   on page nine and then continuing on for the next few

4   paragraphs through to page 11, paragraphs five, six, and

5   seven, it deals with treatment of BOBS' secured claims and

6   the treatment of the -- what I have ruled as an unsecured

7   claim and the disputed claims reserve and how to address

8   those things.

9        It includes some language -- this is on the bottom

10  of page nine, top of page ten of that order, that payoff

11  statements will take into account any court orders that

12  reduce the amount of the claim, and then BOBS is given the

13  option to reserve all of its rights by providing more

14  detailed -- a more detailed breakdown.

15       Then that was followed by a scheduling order in

16  the adversary proceeding of what was Hollister v. BOBS and

17  then became the Official Committee of Unsecured Creditors

18  and the Paramour Holdings, LLC entity against BOBS, the

19  adversary proceeding 21-1173, the scheduling order.  And in

20  that order, that's the one that says October 12th, 2022 is

21  the deadline for Defendant, BOBS, to file a motion or take

22  such other action as may be necessary and appropriate to

23  address the issue of whether dot dot dot any lien declared

24  upon property owned by Dana Hollister, Debtor and Debtor in

25  Possession, in other words, Debtor, asserted by BOBS, if

6

1  otherwise valid and enforceable, survives the confirmation

2  of the plan dot dot dot, defined as the right to issue.

3        So, the reference to property owned by Dana

4  Hollister I believe includes her interest in the disputed

5  claims reserve.  And, so, to me, the October 12th deadline

6  was for BOBS to file a motion or take such other action as

7  may be necessary and appropriate to address the issue of

8  whether a lien survives on the disputed claims reserve or,

9  for that matter, on the property that's distributed under

10 the plan.

11        I've already ruled in previous hearings, including

12 the confirmation hearing and the hearing on whether to grant

13 stay pending appeal, which was on October 25th, 2022, I've

14 already ruled that in my view under 1141(c) I believe it is,

15 the lien doesn't survive on the property that's distributed

16 under the plan but that the -- the plan in effect is a

17 transfer free and clear with liens attaching to the disputed

18 claims reserve, and the disputed claims reserve was set at

19 the confirmation hearing at $2 million.

20        Then -- and I explained some of my reasoning

21 behind that in the hearing on whether to grant the stay

22 pending appeal.  At the confirmation hearing itself, there

23 was not a whole lot of discussion about the -- the $2

24 million amount.

25        So, then, skipping ahead now to the Docket 1864,

7

1  there's an order enforcing order confirming joint Chapter 11

2  plan, and that sets a deadline of November 1 for BOBS to

3  file a payoff statement and supporting declarations

4  detailing the amounts that BOBS asserts should be included

5  in -- in claim number 33 through September 19, 2022, which

6  was my -- the date of my oral order confirming the plan, and

7  that's pursuant to, again, my oral rulings on the October

8  25th hearing.

9           So, that's all by way of background.  And then we

10  have the declaration of Mr. Resnick, Docket 1874, and the

11  response from the plan proponents, Docket 1880, on the -- on

12  the payoff demand -- excuse me -- the payoff demand issues.

13           Okay.  So, with that backdrop, first, let me note

14  I'm very much aware that there are the pending appeals.

15  And, so, everything that I say is with -- I hope keeping

16  that in mind, including that I can enforce previous orders

17  and -- and they're not stayed.  So, I can proceed pursuant

18  to those orders, but I can't vary things that are actually

19  on appeal.  As the tentative ruling had indicated with

20  respect to the motion to amend proof of claim 33, I think

21  there's a slightly different issue when we've got an

22  interlocutory appeal, that until the Appellate Court accepts

23  jurisdiction or grants leave to appeal, that I don't think

24  I'm divested of jurisdiction, but I don't know that it makes

25  a difference in this matter because, either way, I think I'm

8

1  still allowed to proceed because it's enforcing and

2  interpreting the confirmation order and the -- the other

3  orders that I referenced.

4          So, all of this is fairly technical, everything

5  that I've said so far.  But I -- I wanted to try to get that

6  all on the record to be sure that we're all on the same page

7  here about what my thinking is at least, and you can address

8  if I've misstated anything or if you think -- if you

9  disagree with any of that and also for the benefit of any

10  Appellate Court, that I'm at least attempting to stick

11  within the bounds of what I'm permitted to do.

12          Okay.  So, now we get to -- to Mr. Resnick's

13  declaration.  He says that the -- the demand for payout

14  statement "is not consistent with the language of the order

15  confirming plan in this case."  I'm reading from Docket

16  1874, page two, lines 10 through 11.

17          I -- I don't think that's right.  I think that the

18  confirmation order, it didn't go into any great detail about

19  what should be included in the payout statement, but it did

20  have several paragraphs on that general concept, and -- and

21  my usual experience with payoff demands is that they provide

22  some additional information, not just a flat number.  But,

23  be that as it may, in any event, I've issued additional

24  orders, and so now there is just information from BOBS.

25          I was a little confused by some of the material,

9

1 but I think I understand, and let me lay out what I think I

2 understand and where I think I might disagree.

3      So, I -- I'm looking at Exhibit A to Mr. Resnick's

4 declaration, Docket 1874.  And -- and then some of the other

5 exhibits as well.  So, there's a payoff demand for claim 32

6 and a payoff demand for claim 33.  And then behind that,

7 there are calculations, spreadsheets showing the dollar

8 amounts of interest, monthly accrual of interest and where

9 applicable late fees and where applicable payments.  And

10 that's -- there's one spreadsheet for claim -- for what's

11 been included in claim 32 and one that's -- for what's been

12 included in claim 33.

13      And the -- the larger one is for $13,532,807.50,

14 and that matches the -- the cover of calculations, the

15 demand payoff amounts, and then the -- the other one is for

16 two million four ninety-six -- excuse me.  Is that right?

17 Yes, $2,496,339.46.  And, again, that matches.

18      Now, the -- the breakdown is a little different in

19 the spreadsheet from the way it is in the demand statements.

20 In the demand statements, there's a breakdown of interest,

21 default interest, late fees, attorney fees, and then the --

22 the total, the -- the -- the spreadsheet includes the same

23 things but -- no, excuse me.  It's not -- it does include

24 the same things.  Where I was a little confused was how we

25 got to a dollar amount of $37,235 for attorney fees

10

1  attributable to claim 32.  But I think that that's shown in

2  the -- an additional exhibit, which is at PDF page 17 of

3  Docket 1874, which is what's referred to as a discount for

4  motions for relief or MFR and a discount for claim number

5  32, and it looks like the discount for claim 32 is what has

6  been included in the -- the dollar amount for -- in that

7  initial Exhibit A breakdown for attorney fees.  And it seems

8  as if that's probably the sum of -- if you were to go to PDF

9  page 43 of 46, again, of that Docket 1874, there's a $30,810

10  amount, and I -- I gather that if you add that plus the

11  miscellaneous items, you get to $37,235.  So, I -- I think

12  that's it, and then also based on -- that's also based on

13  Mr. Resnick's declaration, paragraphs 13 through 17, on

14  pages three to four of Docket 1874.

15          So, it seems to me the -- the $37,235 is an

16  attempt to focus on things that are specific only to claim

17  32 and -- and not attributable to claim 33.  And where I

18  think I disagree a little bit with that is that I would

19  think, in addition to things that are specific to claim 32,

20  there should be an allocation to claim 32 proportional to

21  its -- its share of total debt for all of the attorney fees.

22  And I mentioned this at the hearing on October 25.  This

23  came up at one point.

24          So, this is -- there's a transcript of that

25  hearing in Docket 74 of adversary proceeding 21-1173, page

11

1   45, lines 23 to 24, that I was at this point talking about

2   the fact that most litigations didn't seem to be specific to

3   claim 32, but involved both claim 32 and claim 33.  And, so,

4   what I said here is:

5              "From my perspective, the priming

6          lien issue" -- which was one example of

7          the litigation -- "was not principally

8          about priming claim 32.  It was

9          principally about priming claim 33, and

10         then there was a little extra from claim

11         32, but that didn't make a difference to

12         the outcome.  And, so, it seems to me

13         that the appropriate allocation of

14         attorney fees with respect to that issue

15         is in proportion to the principal dollar

16         amount of the two claims."

17         And that's, again, with all rights reserved for

18  people to argue for something different, but -- but I think

19  that pretty much all of the litigation in this case probably

20  should be allocated in proportion to the principal amount --

21  principal dollar amount of the two claims or maybe the

22  current dollar amount of the two claims or some -- some

23  proportion like that.  And then that would be adjusted for

24  things that are dedicated solely to one claim or the other.

25         So, if I'm right in my interpretation of what Mr.

12

1  Resnick has done, then based on the reasoning I've just

2  described, I would be inclined to make a -- a dollar

3  adjustment, probably something in the $30,000 range, to the

4  attorney fees that are attributable to claim 32, an upwards

5  adjustment to claim 32 because that would account for its

6  proportional share of the general litigation, and then, in

7  addition, there would be the attorney fees that are listed

8  already here that are attributable to just claim 32.

9        And, so, it's a fairly small dollar amount in the

10 grand scheme of things, but to me that would be the -- the

11 distinction.  And that would be my oral tentative ruling

12 about how I would disagree with the payoff statements, that

13 claim 32 it seems to me should probably be increased by some

14 dollar amount, and I -- I had started doing the math, and

15 then I realized I was using some incorrect numbers and --

16 because I hadn't realized quite where the $37,235 came from.

17 So, anyway, but I think it would be around $30,000

18 adjustment, upwards to the payoff demand for claim 32 and

19 concurrently a downward adjustment in the same dollar amount

20 to claim 33.  Again, not much different in the scheme of

21 things.

22       Along the way to reaching that, I'm not ignoring

23 the fact that there is a -- an objection from the plan

24 proponents that there's hearsay and that -- and other

25 concerns that they've got about some numbers that are -- or

13

1  some descriptions that are redacted and with it the

2  redaction really should have been there, and a lack of what

3  they see is sufficient detail and so on.

4        But -- but I'm inclined to overrule those

5  objections because the -- most of -- of what's in Mr.

6  Resnick's declaration, when it comes to the calculations,

7  it's very simple math.  It's -- there's just a lot of it.

8  But the -- you know, $80,000 each month on a -- or 12

9  percent interest on an $8 million claim, it's pretty

10  straightforward.  And, you know, adding that up each month

11  and then late fees where appropriate and so on, I don't

12  think you need an expert on that.  I don't think it's really

13  a matter of hearsay or not.  And when it comes to the

14  attorney fee bills, those might be admissible on -- on

15  exceptions to hearsay, but even if they weren't, there could

16  be some -- an offer of proof, and I -- I don't think we all

17  want to waste time with getting the attorneys in to verify

18  that these are, in fact, their -- their billing statements.

19  But, you know, you can all push back on that if you want.

20        A couple other things.  I noted that there are

21  entries -- there are various entries that from what I could

22  tell do relate directly to proof of claim 32, and I didn't

23  go through and add up all of those entries to try to

24  replicate however Mr. Resnick arrived at the -- what was the

25  number, $37,235?  I -- I ball parked it, and it seemed as if

14

1  that's probably about right in terms of what's allocated

2  specifically to claim 32 if you take the -- the $30,810

3  that's under the category for Hollister adversary re claim

4  32 as it's described at Docket 1874, part two, pages 39 of

5  46, and 43 of 46.

6          So, there are some -- some tweaks that you could

7  make in either direction, but it seems to me given the

8  record that's been presented before me, there would -- that

9  that's a pretty good estimate.  Again, the $30,000 is kind

10 of a ballpark, and we might need to recalculate that, but

11 that's a pretty decent estimate.

12         The other adjustment that I think needs to be made

13 is, as I mentioned at the hearing on October 25th, 2022, the

14 -- BOBS is going to be getting a dividend as an unsecured

15 creditor under my current ruling and under the plan.  And,

16 so, it -- it would be double counting to give it a

17 distribution on that and then also give it a -- a claims

18 reserve on that distribution.  And, so, at that hearing, I

19 had told you all that I had done a -- a rough estimate of

20 what that distribution might be, and I had come up with a

21 number of $296,307.35 as a -- my rough estimate of the

22 distribution that BOBS might get on account of its unsecured

23 claim 32.  And, therefore, the disputed claims reserve would

24 only need to be the amount above that that BOBS might be

25 entitled to if it were to be able to prove a -- a secured

15

1  claim.

2          So, I would adjust the -- the total reserve

3  downwards by that dollar amount, the two ninety-six thousand

4  some dollar amount, and this was described -- again, I'm

5  referring to the transcript, which is Docket 74 in adversary

6  proceeding 21-1173, and it's at page 14, lines 19 to 22,

7  where I -- I mention that I got to a dividend of 21 percent

8  and then what that would result -- result in for possible

9  distribution to BOBS.

10          All of this is a fair amount of calculations by

11  me.  I'm only doing this because I didn't see these

12  calculations by the parties, and I -- so, I recognize that

13  you haven't, for example, had a chance to see the

14  spreadsheet that I put together to try to figure out what --

15  whether it would be that 21 percent dividend that I came up

16  with and what the dollar amount of distribution to BOBS

17  would be and what its balance would be that was owed to it

18  and so on.

19          So, I could be off in these figures, you know, but

20  I'm attempting to work with what the record is that's been

21  presented.  And, so, that's what I come up with in terms of

22  the -- the payoff demands for claim 32 and claim 33.

23          So, why don't I pause there.  That's my oral

24  tentative ruling with regard to the payoff demand.  I guess

25  I -- I'll note one other thing.  Procedurally, again, for

*Echo Reporting, Inc.*

16

1 the benefit of any Appellate Court or anyone else looking at

2 this later on, I'm very much aware that this wasn't teed up

3 in such a way that there is a particular motion, and, so, I

4 am taking the -- the papers that were filed pursuant to the

5 scheduling order, enforcing order confirming joint Chapter

6 11 plan.  That's -- that order is Docket 1864.  I am -- I am

7 taking the parties' briefs as, in effect, motions to -- a

8 motion to enforce the -- the order or to clarify the order

9 or to do whatever else I can do, notwithstanding the appeal,

10 to -- to try to get this nailed down about what the payoff

11 demand should be.

12        And, so, procedurally, it's not as crisp as in

13 retrospect it -- I would have liked it to have been, but I

14 think -- I don't think anyone has been prejudiced by that,

15 and I think that any objection that it should have been by

16 some different process has been either consciously waived or

17 alternatively forfeited by not having been raised earlier.

18        So, I hope that this lets you all know in

19 sufficient detail what my reasoning is and how I think that

20 these demands may need to be adjusted.

21        All right.  Mr. Resnick, do you wish to contest

22 that oral tentative ruling?

23        MR. RESNIK:  You know, your Honor, I don't.  I

24 think it was very well reasoned.  I apologize for my

25 involvement of some of the convoluted sequence of events

17

1  here.  I did try to get it all together within a few days,

2  believe it or not.  I had a 102 temperature at our last

3  hearing, and I took a couple of days after that to -- to

4  finally reconcile myself.  So, I'm feeling better today.

5        You know, as you're talking about this, I -- I

6  have no problem whatsoever, you know, contacting the plan

7  proponents or the Unsecured Creditor Committee to try to

8  reconcile these numbers the way that you're requesting them.

9  Of course, we believe that no matter what, we would have had

10 to defend proof of claim 33 irrespective of proof of claim

11 32 as it pertains to the plan and as it pertains to

12 protecting the rights with the priming motion and -- and the

13 motion for relief and some of the other collateral motions

14 that were in the bankruptcy.

15       At the end of the day, I do understand where the

16 Court's coming to.  I do believe that that's probably the

17 simplest if not the fairest approach.  The only thing that I

18 would request if we're not going to do a full blown out

19 proof of claim objection based on the attorney fees, which

20 is -- which is probably more detail than we all need to get

21 into, I would just like to reserve the right that if we do

22 somehow miraculously prevail on the merits of the appeal,

23 that we haven't waived any of that -- the rights to those

24 additional attorney fees that were incurred up and to this

25 point.

18

1          THE COURT:  All right.  So, I guess I -- I would

2  need to break down the -- the -- that issue.  It kind of

3  spills over into the disputed claims reserve issue.  I -- I

4  think that at the time I was making my rulings on confirming

5  the plan and when I orally ruled about the dollar amount of

6  the disputed claims reserve, I don't think I had before me

7  calculations of the sort that I now have, and now that I see

8  these calculations, I see that the amount of default

9  interest and -- and regular interest as well but -- and late

10  fees are larger than what I had in mind, and -- and, so,

11  even with the adjustments that I've talked about, we get to

12  a total that is a little over $2 million.

13          Now, as I -- as I ruled at the hearing on the

14  motion for a stay pending appeal on October 25, 2022, I

15  think that under the confirmation order and under the plan,

16  the -- once the disputed claims reserve is set up, then

17  interest is not accruing at the contract rate but, instead,

18  is accruing at the rate of the interest bearing account.

19  And, so, in terms of Mr. Resnick's statement just now and

20  perhaps request for clarification about reserving all

21  rights, yes, all rights in my view would be reserved to --

22  if BOBS prevails on its appeal, to continue to treat its

23  claim as a secured claim with all of the rights that --

24  inherent to a secured claim up until confirmation and then

25  all the rights that continue to apply after confirmation.

19

1  But, in my view, that's at a different interest rate post-

2  confirmation.  And, so, that would include attorney fees.

3  It would include up until confirmation default interest,

4  regular interest and so on, post-confirmation the reduced

5  rate of interest.

6          But I -- I mention all of that because all of

7  that's what -- in my view, those are the -- the rights that

8  are reserved, but if there's $2 million set aside and an

9  actual dollar amount is more than $2 million, then I don't

10 know that a reservation of rights helps, because the -- the

11 -- the ruling as it currently stands is to confirm the plan

12 with a $2 million claims reserve, not a 2.5 or something

13 else claims reserve.

14         And, so, I -- I don't know that I even have

15 jurisdiction to change the dollar amount, and it may be that

16 that's part and parcel of what was determined at the

17 confirmation hearing, and I don't -- I don't know that it's

18 appropriate to treat today's hearing as a request for

19 reconsideration of that dollar amount or anything else.

20         So, I -- I think that the answer to Mr. Resnick's

21 question or comment is that, yes, all rights are reserved,

22 but I don't know that I can adjust the $2 million claims

23 reserve at this point.  I don't know that that satisfies

24 anyone, but -- but, anyway, that's my attempt to parse

25 things as I see it today.

20

1        Unless there's something else, Mr. Resnick, let me

2   turn to Mr. Rugg.  Mr. Resnick, anything else?  No?

3        MR. RESNIK:  No.

4        THE COURT:  Thank you.

5        Mr. Rugg?

6        MR. RUGG:  Thank you, your Honor.  And I

7   appreciate the ruling.  We won't try to argue some of the

8   points that we raised in our response that you clearly dealt

9   with, and I am happy to work with Mr. Resnick to adjust the

10  amounts consistent with what you stated today.

11       I guess I would only ask for one confirmation

12  which I think goes to one of the issues we raised.  I mean,

13  it's not really the hearsay, but it's the issue of fee to a

14  prior counsel.  And that was to get some sort of

15  confirmation on the record that those fees were, in fact,

16  paid.  Just we'd note that those amounts are at issue.  But,

17  beyond that, I think we can -- we can work on the amounts

18  that you asserted should be -- or the -- I guess the

19  calculation to reduce the amount on 32 to 32 based on the

20  total amount of the claims.  I think we can figure that out.

21  I don't envision it's going to be in anyone's best interest

22  to, you know, further fight on attorneys' fees given the

23  amounts at issue.

24       I will say that I do recognize in the billing that

25  there was obviously some billing judgment used, and I

1  recognize that, and there were things that there was no

2  charges for, and appreciate.  So, I don't -- I don't think

3  it's going to be that fundamental of a fight, and I think we

4  all have bigger issues to resolve to get to closing and get

5  to effective dates.

6          So, the only thing that I -- I guess I would leave

7  out there is just the issue of whether the prior attorneys

8  were, in fact, paid.

9          THE COURT:  Okay.  Thank you for that.

10          Mr. Resnick, can you clarify that issue if you

11  know?

12          MR. RESNIK:  You know, I do know, but who would

13  take my word?  But I do know that those -- those statements

14  were made.  I guess I could verify that after today's

15  hearing.  Give me a day or two to, you know, perhaps get

16  some -- some checks or some confirmation that those -- those

17  payments were made.  I don't know much more than that.  I

18  certainly didn't pay them myself.  So, I'd hate to testify.

19  But I have seen the records, and -- and I certainly have

20  seen the payments.  So, I'm comfortable with -- with getting

21  those over to Mr. Rugg.

22          THE COURT:  Terrific.  Okay.  So, then, I can

23  direct the parties to -- to meet and confer about finalizing

24  the payoff dollar amounts.  And, as I've said a number of

25  times, all rights are reserved.  You don't have to agree

22

1    with me, any side.  But this is -- this is -- these are the

2    dollar amounts that you're calculating would be the dollar

3    amounts under my ruling.  And, so, that's the goal here is

4    to get to that dollar amount.

5           Okay.

6           MR. RESNIK:  Your Honor, I don't want a surprise,

7    but there were a couple of times where the $2.4 million was

8    brought up in the omnibus reply and a couple other places

9    replies from us.  So, I don't want you to think that we kind

10   of sandbagged the Court by all the sudden sending over a

11   $2.4 million claim demand.  It was something that we thought

12   was apparent from just the pleadings and the paperwork.

13          THE COURT:  Thank you.  I -- I think that's

14   absolutely right.  I do remember the $2.4 million figure as

15   having been raised before, and but I don't recall seeing any

16   backup for that, and -- and it was based on my ballpark in

17   chambers attempts to kind of figure out the -- the range,

18   and then also at the hearing on October 25, I went through

19   again the -- the analysis that I had done to try to figure

20   out whether $2 million would be sufficient, and it seemed to

21   me that -- that it would based on the record that was before

22   me then.  But, you know, now that I see the -- the figures

23   laid out, I think -- I think that may have been too

24   optimistic of me in terms of how fast interest accrued.

25          Okay.  Unless anybody else needs to weigh in, I

23

1  thought I would turn to the -- an oral tentative ruling on

2  the next issue about whether the disputed claims reserve

3  should be reduced or not.

4         All right.  Not hearing anyone want to go into

5  anything further on the previous issue, I'll turn to that.

6         So, give me a sec to get the order.  ?Okay.  So,

7  I'm looking at Docket 56 in adversary proceeding 21-1173,

8  and this is the September 23 scheduling order that -- in

9  connection with the confirmation of the plan and based on

10  previous discussion on the record and rulings on the record,

11  that -- that the reserve would be $2 million, that October

12  12, 2022 was the deadline for BOBS to file a motion or take

13  such other action as may be necessary and appropriate to

14  address the issue of whether any lien survives, confirmation

15  of the plan.  And, as I've said before, that's a lien item

16  on the disputed claims reserve or on the property of -- that

17  was distributed under the plan.

18         And then, turning over -- that's in paragraph two

19  of that order.  And then in paragraph four of that order,

20  there's the ruling that in the event that BOBS fails to file

21  a motion or take such other action as may be necessary and

22  appropriate to obtain a ruling from the Court with respect

23  to the ride through issue by October 12, 2022, Plaintiffs

24  may reduce the amount of the plan reserve to $315,000

25  without further order of the Court and with the excess

24

1 balance to be remitted to Paramour Holdings, LLC or its

2 designee.

3        So, the question is whether BOBS sufficiently

4 addressed that.  And my oral tentative ruling is that BOBS

5 did not but that I think it's appropriate to consider the

6 papers that have been filed and the proceedings so far to be

7 a request to -- to reconsider whether that really ought to

8 be reduced because I think BOBS went a long way towards

9 complying with -- with that ordering paragraph.

10        So, here's my thinking on that.  The -- I think

11 filing a complaint by itself and especially the complaint,

12 as the parties have pointed out, didn't cite any authority

13 about the lien riding through.  As a complaint, that's fine

14 because complaints normally don't cite cases and engage in

15 argument, but for that reason, I would have thought it

16 should have -- that the complaint should have been

17 accompanied by a motion and in order to comply with this

18 language of filing papers that may be necessary and

19 appropriate to obtain a ruling from the Court.  You're not

20 going to get a ruling just by filing a complaint.

21        So, I -- again, and I -- I got to admit I'm on the

22 fence about this, but I -- I think that on balance, BOBS did

23 not file what it needed to do to -- to really tee this up,

24 and part of the concern all along here has been to try to

25 move things forward sooner rat her than later because I

25

1  think the phrase I used before was that this -- this plan is

2  razor thin.  We've got admin claimants already taking a big

3  haircut in order to get any distribution to unsecured

4  creditors.  We've got ongoing interest accruing to Dailey's

5  clients and others, including BOBS.  And if this is holding

6  up being able to close the deal, there is some prejudice to

7  not getting this teed up and getting a ruling from this

8  Court and then either a stay pending appeal or not and

9  moving things forward.

10         And, so, it seems to me that the -- both the

11 letter of this order and the spirit of this order were that

12 BOBS needed to do more than just file a complaint.  That

13 said, it seems to me that it would be a huge hit to reduce

14 the disputed claims reserve down to $315,000 and that BOBS

15 did -- its papers go through the number of things that it

16 has done and that it may have thought were enough to comply

17 with the scheduling order, and I -- I don't know that it

18 would be -- I'm feeling a little uncomfortable about a

19 reduction -- that great a reduction in a disputed claims

20 reserve when -- when the issue to me is that there may be

21 some wiggle room for interpreting -- there may be some basis

22 to argue that -- that this order is not sufficiently clear

23 and definite about exactly what BOBS needed to file.

24         So, I -- and, in addition, when it comes to

25 reconsideration, if that's what's being asked of me, I think

26

1 the appellate cases, the Supreme Court on down, have taken

2 an approach of trying not to prejudice lien holders' rights

3 and letting the liens ride through.  And the basis for

4 ruling that the plan could be confirmed was to set up a

5 disputed claims reserve in a dollar amount that I thought

6 based on what was before me at the time was sufficient.  And

7 now to reduce it down to $315,000 seems like a pretty

8 drastic result.

9         So, it's messy.  I -- I'll certainly concede that,

10 but that's my oral tentative ruling when it comes to the

11 disputed claims reserve dollar amount issue.

12         All right.  Mr. Resnick?

13         MR. RESNIK:  Thank you, your Honor.  Again, thank

14 you for your deliberate response.  Perhaps the parties could

15 have helped out a little bit more with this ride through

16 issue or -- or what we call it.  I -- you know, when we

17 first got together and sat down and tried to figure this

18 out, we didn't know that we were trying to, for lack of a

19 better word, educate everybody with respect to how the ride

20 through works.  We were really looking to how to protect

21 that security interest.

22         And, as a result, it kind of came out the way it

23 did.  One amend the proof of claim and one declaratory

24 relief.  But we do believe that it would be a drastic

25 sanction to upend that ride through provision until the

27

1  merits of the claim have been determined.

2         I do believe, and I'm not so certain that it's

3  specific to this, but I do believe that the Court has

4  mentioned adequate protection a couple of times with respect

5  to that claims reserve.  The $2 million or the $2.4 million,

6  either way you put it, I think was in the Court's mind with

7  protecting that interest until the merits of the claim had

8  been decided.

9         So, I do appreciate, as I said, the deliberate

10 approach that the Court has taken.  And, clearly, we would

11 endorse such -- such a result.

12        THE COURT:  Thank you.  Thank you.

13        Mr. Rugg?

14        MR. RUGG:  Your Honor, I hate to do this, but I've

15 done it before.  I really had teed up Mr. Gants for this on

16 perhaps more than some of the technical arguments as in our

17 -- as in our response that's on file.  I just would note

18 that this is not a new -- what you would do today is nothing

19 new.  It's not a sanction.  It was something that was

20 specifically contemplated already in the confirmation order.

21 And, so -- so, that's one issue.

22        Two, there's no basis as we sit here today, your

23 Honor, for you to decide that 1141(c) wouldn't apply.  That

24 was the premise.  1141(c) applies.  It's on its face (Zoom

25 glitch) the statutes.  It specifically says what happens

28

1  when a plan is confirmed, not when an effective date but

2  when a plan is confirmed.

3        So, we have straightforward statutory language

4  which I don't think your Honor considered and provided BOBS

5  a means by which they could convince you that it shouldn't

6  be reduced to 315.  What we're talking about now is that

7  they gave it a good effort.  They didn't meet it.  The

8  letter and spirit was more than just filing a complaint.

9  So, they didn't actually meet the standard.

10        But the most important thing is there's nothing

11 before your Honor for you now to decide the issue.  More --

12 or to really reconsider the ruling.  That's entirely

13 inappropriate for there to be a reconsideration now now

14 they've done their appeal.  And, so, ultimately, those are

15 two major points.

16        And the third is that now we're in a situation

17 where BOBS has taken their appeal, and the plan proponents,

18 specifically my client, is now funding the bond for the

19 appeal as if there was a say, saying, Don't worry.  If you

20 lose -- or if -- if you -- if you ultimately win, we're

21 going to reserve money for you just in that case.  So, this

22 has done an exact 180 of the way things should be.

23        And I'm sorry to do this to Mr. Gants, but those

24 are just my preliminary comments.  If he had anything to

25 add, I would ask the Court to indulge just based on -- on

29

1  the briefing.  Sorry for doing the two for one.

2          THE COURT:  Thank you very much.

3          Mr. Gants?

4          MR. GANTS (via Zoom):  I think my colleague

5  addressed many of the points I wanted to raise.  I think one

6  other point to consider.  At the last hearing two weeks ago,

7  Creditor's Committee counsel raised that this complaint has

8  not even been served.  There still has been no effort at

9  service for the last two weeks.  So, I could understand the

10 perspective of, you know, to the extent there's any lack of

11 clarity, we should do this on the merits and we should have

12 an opportunity to do so.  But we're still no closer to

13 actually getting that decision on the ride through issue

14 because it hasn't been placed before the Court.

15         Two weeks ago, BOBS was reminded in front of the

16 Court that service had not even been effected on that

17 adversary complaint.  Service still has not even been

18 attempted.  So, in terms of giving a party a break when, you

19 know, they made a best effort, I'm not seeing a lot of

20 evidence that your Honor has gotten a good vehicle for

21 resolving this issue through the adversary complaint which

22 remains unserved.

23         THE COURT:  All right.  I -- I think there's

24 another aspect that ties into all of this, and that is I

25 keep going back to Section 363(e), which says that at any

30

1  time, even without a hearing, on request of a party for

2  adequate protection, I'm supposed to grant adequate

3  protection.  And -- and, so, I -- it seems to me that now

4  that I've seen the dollar amounts and I'm -- and I'm

5  thinking that a $2 million claims reserve, reducing it to

6  $315,000 would be very drastic, and -- and Mr. Resnick is

7  asking me to keep it at $2 million.  I -- I'm going to keep

8  it at $2 million for now, but I -- I do think that we should

9  talk about setting up procedures to -- to get this issue

10 litigated, and that BOBS does need to -- I think Mr. Neale

11 was arguing before.  Mr. Rugg has argued before.  Mr. Gants

12 has argued before.  Mr. Meshefejian's argued before.  They

13 -- BOBS keeps mentioning this issue about ride through but

14 not really fully briefing it.  And -- and I -- I think I

15 need to set a deadline and -- and give a heads up to BOBS

16 that if they fail to meet that deadline, then there might be

17 some fairly serious consequences to -- to really tee this up

18 and get it briefed.

19       Again, I -- I wish the record were a little bit

20 more crisp on this, but part of the nature of bankruptcy

21 cases, of course, is that you're dealing with things in real

22 time, and we've got investors out there.  We've got changes

23 in interest rates happening.  I don't know where we are in

24 terms of the closing and getting to an effective date.  I

25 know that Mr. Dailey and others are anxious to get their

31

1  clients paid.  And -- and, so, I don't know that if everyone

2  is waiting on an actual ruling in order to be able to close

3  this deal, I mean, the whole point of a disputed claims

4  reserve is to be able to close the deal and -- and continue

5  litigating afterwards.  But it might be that one or more

6  parties along the way, from the title insurer to investors

7  to somebody else, is waiting for at least some preliminary

8  steps in that process.

9         So, I -- I do think that at least based on the

10 present record, I've got to set a pretty quick deadline for

11 BOBS to -- to file a brief on this.  So, let's -- let's talk

12 about a deadline for that.

13        And, Mr. Resnick, I'm presuming that given BOBS'

14 position that this needs to be done in the context of an

15 adversary proceeding, that this would be a motion filed in

16 the adversary proceeding for partial summary judgment, for

17 complete summary judgment.  I don't know what, but some sort

18 of -- so, procedurally, it would be set up to obtain a

19 ruling with respect to the ride through issue.  And I need

20 to know from you how quickly you can get that on file.

21        MR. RESNIK:  Well, your Honor, I have two appeals

22 that are taking up a little bit of my time.  A lot of that

23 obviously merges together.  A lot of these arguments are --

24 are one in the same.  Our position is it was the Debtors who

25 were supposed to provide in the plan that that lien would be

32

1  divested upon the unsecured judgment, and I -- and I guess

2  that burden has shifted to us with the confirmation of the

3  plan.

4          So, where we don't believe that the plan was

5  completely clear, we did try to do this declaratory relief.

6  We did try to do this motion to amend the proof of claim.

7  Both of those clearly weren't dispositive of this situation.

8  So, I would ask for a couple of weeks at least for us to

9  file this motion for summary judgment.  We do have

10 Thanksgiving and the holidays that are coming up.  I do have

11 these two appeals that are coming up, but, you know, I'll

12 burn the wick at both ends if the Court requires us to do

13 that.

14         And I would like to say that the -- the adversary

15 has been served.  It's Docket -- Document 3 in the adversary

16 filed October 20 of 2022.  I could email them a copy once

17 again, FedEx it to them, but if you look at Docket Number 3,

18 there is a proof of service that they were all served with

19 this complaint.  So, I -- I don't want to think anyone

20 didn't see this coming, this adversary.  But to answer your

21 full question, I -- I would need at least two or three weeks

22 if I could, just to put some things together and complete

23 the deadlines for -- for some other projects that we have

24 within our small boutique firm here.

25         THE COURT:  All right.  Thank you.  So -- so,

33

1 then, if I were to adopt that schedule, then that would be

2 -- I'd be reluctant to go out more than two weeks, but if it

3 were two weeks, then that's Tuesday, the 22nd of November.

4 And then I could set deadlines of either two weeks or one

5 week after that for the plan proponents to oppose and then

6 one week after that for a reply and then a hearing after

7 that.

8         So, let me first check with Mr. -- Mr. Rugg first

9 or Mr. Gants, whoever wants to address this.  Why don't I

10 start with Mr. Rugg, about what deadline would work for you.

11 Would you want one or two weeks?

12         MR. GANTS:  Mr. Rugg, you might be on mute.  I

13 suspect he may be saying -- if I can read lips and guess --

14 that on account of the Thanksgiving holiday, two weeks might

15 be appropriate.

16         THE COURT:  That sounds right to me.  So -- so,

17 let's see.  That would take us to December 6 -- no, excuse

18 me.  Is it -- yes, December 6, and then a week after that

19 for the reply would get us to December 13.

20         MR. RUGG:  Your Honor, may I make a suggestion

21 here?

22         THE COURT:  Sure.

23         MR. RUGG:  I'm sorry to interrupt.  When I was on

24 mute, I was also -- this is the fourth bite at the apple.

25 So, perhaps, you know, a full, you know, brief, response,

*Echo Reporting, Inc.*

34

1  reply hearing is not necessarily appropriate, and we do have

2  real issues with getting to a closing with the uncertainty

3  with the confirmation order.  We've gotten, you know,

4  updated payoff amounts from parties that were different than

5  at the time of plan confirmation hearing.  The dollars are

6  going the wrong way.  We're all working very hard to get to

7  a closing, but we've now spent time and incurred fees for

8  two different motions, you know, motion for stay, this

9  motion, the adversary.  So, we're doing a lot of things

10 outside of the closing.  So, I would just ask and suggest

11 that, given this is their fourth attempt to address the

12 issue that was already put forth in the confirmation order,

13 that we maybe cut off a reply and get right to a hearing.

14        THE COURT:  Mr. Resnick?

15        MR. RESNIK:  Your Honor, since day one in April

16 they proposed a reserve clause.  I don't see how that's

17 prejudicial to them to -- to put up the reserve clause and

18 continue with the closing.  That was part and parcel of the

19 plan that they were proposing.  Unless something's been

20 modified since then as if the $2 million has to be stricken,

21 I don't see the harm or the prejudice in going forward with

22 what the plan originally proposed.

23        MR. RUGG:  May I respond?

24        THE COURT:  Go ahead.

25        MR. RUGG:  The difference is the claim is now

*Echo Reporting, Inc.*

35

1  being adjudicated unsecured, and we're being -- and we're

2  being penalized for that and holding a reserve for it.

3         THE COURT:  Okay.  Well, I -- I think that, in

4  addition to the claim having been adjudicated as unsecured,

5  I do think that, regardless of whether this issue was

6  raised, you know -- it was raised kind of -- it was raised

7  orally at the confirmation hearing, as I recall.  And -- and

8  then there was some question at that point about whether I

9  could confirm the plan or not, and we had some discussion

10 about it, and then we've had some subsequent proceedings

11 that we've gone through here trying to tee this up.

12        So, I do think BOBS has not moved as fast as it

13 could have in getting this done, and I'm concerned about

14 that, and I think Mr. Rugg's suggestion is a good one, to --

15 to dispense with a written reply and have a reply orally at

16 the hearing.  And what I'm inclined to do is to specially

17 set a hearing for December 13, 2022 starting at 10:00 a.m.

18 unless -- I know in the past we've had some folks on the

19 east coast.  So, we could make it in the afternoon instead

20 of the morning or -- or morning instead of the afternoon,

21 whatever would be easier for folks.

22        So, any objection to that?  Given -- given that

23 I've already made a ruling to dispense with a written reply,

24 is there any objection to that date, December 13, Tuesday,

25 December 13, at 10:00 a.m.?  Let me go around the room.  Mr.

36

1  Rugg?

2          MR. RUGG:  Your Honor, that works.  Thank you.

3          THE COURT:  Okay.  Mr. Resnick?

4          MR. RESNIK:  That works perfect.  Thank you, your

5  Honor.

6          THE COURT:  Thank you.

7          Mr. Meshefejian?

8          MR. MESHEFEJIAN:  That works, your Honor.  Thank

9  you.

10          THE COURT:  Okay.  Anyone else?

11      (No response.)

12          THE COURT:  Okay.  All right.  So, I think beyond

13  that, we've got the -- the written tentative ruling that I

14  posted about the motion to amend proof of claim 33, and I --

15  I think Mr. Resnick had already noted there's not a lot to

16  be said maybe on that.  And then there's the continuance of

17  the status conference or conferences in both the case -- the

18  bankruptcy case itself and the adversary proceedings.

19          And the tentative ruling was to continue to

20  December 6th at 2:00 p.m.  Frankly, I've forgotten whether

21  there's anything else on for that time or, if not, then

22  maybe a continuance to the same Tuesday, the 13th of

23  December would -- would make sense.  Let me just take a

24  quick look and see if there's anything in this case on for

25  December 6th, and then I'll come back and see if there are

37

1  any other issues that we need to address today.

2          MR. MESHEFEJIAN:  Your Honor, this is Krikor

3  Meshefejian.  I believe there's a fee app hearing scheduled

4  for December 6th at 1:00 p.m.  But I think it's appropriate

5  to continue the status conferences to December 13th because

6  that fee app hearing, first, it's scheduled at 1:00 p.m.,

7  doesn't really involve any of these issues that we've

8  discussed today.  So, I would think it would be appropriate

9  to have the status conferences just go to December 13th at

10 2:00 p.m., unless your Honor's procedures and preference is

11 different than that, of course.

12         THE COURT:  Thank you.  I do like to have status

13 conferences any time I have anything else going on, so that

14 -- in the bankruptcy case.  But I don't know -- I don't need

15 to -- to have a status conference in the adversary

16 proceedings at that time I don't think.  So, why don't I

17 continue -- I'm just getting back to my notes here.  So,

18 I'll continue the status conference in the bankruptcy case

19 to December 6th at 2:00 -- or was that 1:00 or 2:00?  I've

20 forgotten now.

21         MR. MESHEFEJIAN:  It's -- the fee application

22 hearings are scheduled for 1:00 o'clock.

23         THE COURT:  That -- okay.  That sounds right.  And

24 then -- but I will continue the -- the adversary proceeding

25 status conferences to December 13th at 10:00, which will

38

1 also be set as the hearing on this motion to be filed and

2 served by BOBS on November 22nd, the motion for summary

3 judgment on the ride through issue.

4       And then I think I need to -- on the payoff demand

5 amounts, I'm directing the parties to meet and confer, and

6 you've already indicated that you -- you can probably work

7 things out based on what my rulings have been, and it's

8 probably not worth arguing about the -- some of the other

9 stuff, the details.  But I think I'll continue that as well

10 just in case there's any last issues that need court

11 involvement.  So, that's also to December 18th -- excuse me

12 -- 13th, at 10:00.

13       And then when it comes to the issue of the

14 disputed claims reserve, I've given you my ruling on that,

15 and why don't I direct Mr. Resnick to prepare the order on

16 that.  But, of course, run it past the plan proponent.  And

17 that -- I think it should just be a simple for the reasons

18 stated on the record that the -- the claims reserve is

19 maintained at $2 million, that the dollar amount of the

20 claims reserve is maintained at $2 million.

21       MR. RUGG:  And is that -- your Honor, is that

22 subject then to the adversary, because I don't -- now we're

23 kind of cross paths on the different proceedings.  I just

24 want to make sure that that doesn't cut off what we're then

25 going to brief and have presented.

39

1          THE COURT:  Yes, correct.  So, the -- that's

2     subject to any future ruling that I might make in the

3     adversary proceeding about whether the lien does or does not

4     ride through.

5          I will say that because the $2 million claims

6     reserve was part and parcel of the confirmation proceeding,

7     I'm a little uncertain whether I still have authority to --

8     to change that dollar amount because there is an appeal from

9     the adversary -- from the confirmation order.  So, maybe

10    that deprives me of the authority to adjust that since it

11    was part of that proceeding, but I -- I don't know that

12    that's an issue we have to deal with today.  And, in any

13    event, I -- I guess -- well, yeah, I don't think that's an

14    issue that we need to deal with today.

15         MR. RUGG:  I'm sorry, your Honor.  You mean you

16    can't adjust it up?

17         THE COURT:  I -- I don't know that I can adjust it

18    up or down.  The --

19         MR. RUGG:  So that -- the ability to do so was

20    specifically in the confirmation order.  And then if we're

21    not -- I understood that's what we were going to be, again,

22    briefing, that if -- if they couldn't show the ride through

23    applied, then there could be the adjustment down.

24         THE COURT:  Well, that's a point.  So -- so, I

25    guess then --

40

1        MR. RUGG:  It's in paragraph seven of the
2   confirmation order.

3        THE COURT:  Yes.  So, paragraph seven does
4   contemplate a -- a possible reduction, it's true.  And I
5   think what I'm doing today is, in effect, modifying the
6   scheduling order, and I think that that's probably all
7   consistent with retaining jurisdiction even for matters that
8   are on appeal to enforce and interpret my -- and act within
9   the discretion that's already set forth in the unstayed
10  confirmation order.

11       So, my -- I -- I think that now that Mr. Rugg has
12  pointed this out, that I can still probably adjust the --
13  the $2 million -- in the event that I were to rule that no
14  lien attaches to the disputed claims reserve, then the --
15  then the funds could be released, again, if there's no stay
16  pending appeal.

17       Okay.  So, I think -- I think that's it.  Let me
18  just recap.  So, I'm denying BOBS' motion to amend claim 33,
19  and the proponent should lodge a proposed order on that and
20  attach a copy of the written tentative ruling that I posted
21  prior to today's hearing.

22       I'm continuing the status conference in the
23  bankruptcy case to December 6th at 1:00 o'clock, concurrent
24  with the fee application.

25       I am continuing the -- what I'm treating as a -- a

41

1  motion in a contested matter involving the dollar --

2  appropriate dollar amounts of the payoff demand.  I'm

3  continuing that to December 13 at 10:00 a.m.  But, in the

4  meantime, I'm directing the parties to meet and confer, and

5  I suspect that they'll be able to figure out dollar amounts

6  for both proof of claim 32 and proof of claim 33 so that

7  it's teed up for any escrow agent to know what dollar amount

8  needs to be paid and for the plan proponents to figure out

9  what needs to be put in a claims reserve.

10         And then I'm continuing the adversary proceeding

11  status conferences in both the -- both of the ones that are

12  on for today to December 13, 2022 at 10:00 a.m.  And I am at

13  present denying the, again, what I'm treating as a motion,

14  the contested matter of reducing the disputed claims

15  reserve, that it's without prejudice to a possible reduction

16  in the future if I were to rule in the plan proponent's

17  favor in connection with the upcoming motion for summary

18  judgment in the adversary proceeding that BOBS has most

19  recently commenced.  But I am -- for the present purposes, I

20  am denying the request to reduce the disputed claims reserve

21  from $2 million to $315,000, and Mr. Resnick is directed to

22  lodge a proposed order on that, for the reasons stated on

23  the record, and circulate it to Mr. Rugg and Mr. Meshefejian

24  or -- well, to the plan proponents before you lodge it.

25  And, as always, if there's any objection to the form of

42

1  order, contact chambers right away.

2           And then I'm, as a scheduling matter, setting the

3  schedule for BOBS' motion for summary judgment on the ride

4  through issue in that adversary proceeding, and that would

5  be November 22nd deadline for BOBS to file and serve its

6  motion for summary judgment on that ride through issue.

7  December 6 for the plan proponent's opposition, and December

8  13 at 10:00 a.m. for the hearing specially set on that.

9           I think that's everything.  Let me go around the

10  room and see if there's anything else.

11          Mr. Resnick?

12          MR. RESNIK:  Thank you, your Honor.  I really do

13  believe that you used a very flexible and pragmatic approach

14  to everything, and I can only throw myself on the dagger and

15  say I appreciate everything that you've done here with

16  respect to the four corners of the orders here.

17          I did want to say a couple of things about the

18  motion amend the claim 33 -- I mean 30 -- yeah, 33.  You

19  know, I -- I'd hate to waste the Court's time any

20  additional.  I don't know if there's anything I can say that

21  would change the Court's mind other than that claim has

22  always looked to the lien for satisfaction.  It's clearly an

23  allowed secured claim.  The future advance comes from that

24  generic deed of trust.  So, the origin of the debt remains

25  the same as the other loan modifications and loans.

43

1        Obviously, the Court found under 1122 that there
2   was a commonality with those claims as they were class two
3   claimants, and we never saw any prejudice here because, as
4   I've stated a couple of minutes ago, since the initiation of
5   the plan back in April or May, they've always reserved the
6   $2 million and change and that there would be no problem
7   with accommodating that amount.  That was pretty affirmative
8   by the plan proponents and the Unsecured Creditor's
9   Committee.
10       Lastly, we do believe that the disallowance of the
11  claim didn't necessarily inhibit our right under 1141 since
12  506(d) -- 1141 must apply outside of that 506(d) context.
13  Now, knowing that, I guess I'll put that in my motion for
14  summary judgment and some of the other details, but I did
15  want to get on the record that there was -- it certainly
16  wasn't in bad faith filing the motion to amend the proof of
17  claim 33 and that there was some relation to the note in the
18  deed of trust, more so than you would find in a completely
19  different interest or a completely different property.  So,
20  I just wanted to -- to relay that.  I do know that the Court
21  was concerned maybe a little bit with bad faith or the Court
22  was concerned that maybe we were trying to circumvent the
23  appellate process, but we certainly weren't, and I just
24  wanted to clarify those points.
25       THE COURT:  Thank you, Mr. Resnik.

44

1    I -- I -- I'm going to stick with the tentative

2 ruling on that.  So, I -- I will deny the -- the motion, and

3 the plan proponent should lodge a proposed order on that,

4 but I -- I didn't mean to cut you off there, Mr. Resnik.  I

5 jumped the gun.

6    All right.  Anything else for today?  Mr. Rugg?

7    MR. RUGG:  No, your Honor.  I don't think so.

8 And, with no disrespect to Mr. Meshefejian, I don't think

9 we'll really know if there's anything else without Mr. Neale

10 here to tell us what we've missed procedurally, but we can

11 all do a group effort.  I'm not aware of anything, your

12 Honor.

13    THE COURT:  Okay.  All right.

14    Mr. Meshefejian?

15    MR. MESHEFEJIAN:  No further comments.

16    THE COURT:  Okay.  Thank you.

17    Mr. Tilem?

18    MR. TILEM:  No, your Honor.  That's -- that's

19 fine, although there will be -- I just want to note there

20 will be probably more than one fee application scheduled for

21 the hearing on the 6th, and we'll be planning to file one as

22 well, and there are a total of four potential applicants,

23 Levene, Neale, my firm, the accountants, and the special

24 family tax law counsel, those four.

25    THE COURT:  Thank you for the heads up.

45

1          Mr. Gants?

2          MR. RUGG:  Nothing, your Honor.

3          THE COURT:  All right.  Thank you.

4          And Mr. Dailey?

5          MR. DAILEY:  Nothing from me, your Honor.

6          THE COURT:  Okay.  All right.  Thank you all.

7          That concludes the hearing, and we are off the

8 record.

9      (Proceedings concluded.)

10

11          I certify that the foregoing is a correct

12 transcript from the electronic sound recording of the

13 proceedings in the above-entitled matter.

14

15 /s/Jordan Keilty_____    12/16/22_____

16 Transcriber                Date

17

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

18

19 /s/L.L. Francisco_____
L. L. Francisco, President
20 Echo Reporting, Inc.

21

22

23

24

25

*Echo Reporting, Inc.*